388 So.2d 747 (1980)
STATE of Louisiana
v.
Johnny TELSEE, Jr.
No. 66786.
Supreme Court of Louisiana.
September 3, 1980.
*748 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Patrick G. Quinlan, Asst. Attys. Gen., for plaintiff-appellee.
N. Graves Thomas, Shreveport, for defendant-appellant.
CALOGERO, Justice.
Defendant was charged by grand jury indictment on February 24, 1977 with the crime of aggravated rape. He pled not guilty to the charge. In May, 1978, defendant's motion for a mental examination was granted and the Court appointed a Sanity Commission to examine defendant. On June 26, 1978, after the submission of the Sanity's Commission's report the district court ruled that defendant lacked the mental capacity to assist in his defense and ordered that he be committed to the Forensic Unit of the East Louisiana State Hospital at Jackson, Louisiana for examination and treatment.[1]
The trial court on November 20, 1979, after hearing the report of the second sanity commission composed of the same doctors who had examined defendant previously ruled that defendant was capable of standing trial. On October 15, 1979, defendant withdrew his former plea of not guilty and pled guilty to forcible rape. The trial court accepted the plea and on December 10, 1979, the trial judge sentenced defendant to forty years at hard labor "at least half of which" was to be without benefit of parole, probation or suspension of sentence. Defendant on appeal contends that the trial court erred in imposing an illegal and excessive sentence.
On December 17, 1977, the rape victim (who shall be referred to hereafter by the pseudonym "Ms. Jones") was driving home from her job at a hospital around midnight. The seventeen year old defendant drove behind Ms. Jones' car alternately flicking his lights from dim to bright, causing Ms. Jones to pull her car onto the shoulder of the road where she stopped. Defendant parked his car behind Ms. Jones' car and approached the driver's side of the car stating that he was a "private cop." When she asked to see some identification he showed her his driver's license in a flip-over ID case. He then opened the car door, jumped in and grabbed her.
The state contends that he began choking Ms. Jones and told her that he had a gun. *749 Defendant concedes that the victim resisted, her resistance was overcome by force, and that she received numerous bruises and scratches on her neck and face and a cut on her leg. After overcoming her resistance he drove to a remote area of Caddo Parish where he raped her. Defendant returned to the spot where he abducted her, left Ms. Jones at her car, and drove home to his parents' house.
According to the state defendant threatened to kill her if she resisted and when he left Ms. Jones back at her car he told her that he knew where she worked and would kill her if she told anyone about the rape. The state also contends that defendant took all the victim's money and a gold watch which was found in his coat pocket when he was arrested. Defendant contends that shortly before the rape he smoked a marijuana cigarette laced with PCP, commonly known as "angel dust."
In a single assignment of error defendant in essence makes four arguments as to why his sentence should not be affirmed:
(1) The trial judge's representations to defendant that he would receive an intermediate length sentence caused defendant not to seek a pre-sentence evidentiary hearing at which defendant would have rebutted or explained any incorrect information upon which the district court may have relied.
(2) The trial court failed to particularize his reasons for sentencing in violation of C.Cr.P. art. 894.1.
(3) The sentence imposed was excessive in violation of Article I, Section 20 of the Louisiana Constitution.
(4) The portion of his sentence in which he was given twenty years[2] without possibility of parole, probation, or suspension of sentence is illegal as R.S. 14:42.1 does not allow the trial court to deny a defendant probation, parole or suspension of sentence for more than two years of whatever sentence it imposes.
Finding merit in defendant's first argument we need not consider the other three.
In brief defendant states that after he was denied permission to inspect the pre-sentence investigation report for inaccuracies, defense counsel informed the judge that in light of the sensitive nature of the offense and the seriousness of the charge, defendant would move for a pre-sentence evidentiary hearing. At in-chambers conference the trial judge read to defense counsel the investigating officer's and defendant's version of the crime. The judge informed defendant that he would not in sentencing defendant consider any information other than that what he had just read. Despite having no serious dispute with the part of the investigating officer's report that the judge read to him defense counsel asserts that he told the judge he was apprehensive about the penalty and still intended to request a pre-sentence evidentiary hearing to establish a record of defendant's background and attitudes for appellate review. The trial court informed counsel that such a hearing was not necessary because although he did not intend to give defendant a light sentence he was not going to "hang" him. At a subsequent meeting between the trial judge, defense counsel, and defendant's minister defendant asserts that the judge reaffirmed that he would consider only the pre-sentencing report in sentencing defendant and told both defense counsel and defendant's minister that defendant would receive an intermediate length sentence.
At sentencing in December, 1980, defendant made a brief statement in which he expressed remorse for his crime and his counsel asked the court to consider mitigating factors, stressing that defendant was only seventeen, had no previous convictions, and that defendant had a serious drug problem at the time he committed the rape. Immediately after the trial judge finished his reasons for sentencing defense counsel *750 objected that he had been misled by the court's assurance that he was not going to "hang" defendant. After the judge conceded that he had used that expression defense counsel repeated his complaint that he had been misled into not asking for a pre-sentence hearing. When he objected to the length of the sentence on the grounds that no weapon had been used and the state could not have proved aggravated rape the trial judge stated that he was "getting into evidence." Defense counsel replied that he mentioned the reduction in charge only because the judge had mentioned it in sentencing and again contended that the state could not have convicted defendant of aggravated rape. The trial judge did not contest defense counsel's assertions about sentencing and later when asked by defense counsel, told him that he had discussed sentencing with the victim. Defense counsel then stated that if he had known that, he would not have foregone a sentencing hearing and would have called Ms. Jones as a witness.
Pre-sentence hearings are not required by our Code of Criminal Procedure, but this Court has held that the due process guarantee of Article 1, Section 2 of the Louisiana Constitution requires that a defendant be given an opportunity to rebut false or invalid data of a substantial nature, to which the sentencing judge is exposed, where there is a reasonable probability that it may have contributed to the harshness of the sentence. State v. Richardson, 377 So.2d 1029 (La.1979); State v. Bosworth, 360 So.2d 173 (La.1978); State v. Underwood, 353 So.2d 1013 (La.1977). Due process does not necessarily require a full scale evidentiary hearing,[3]State v. Bosworth, 360 So.2d at 176, but due process and fairness values require that a defendant be afforded an opportunity to deny or explain prejudicial information otherwise secret to the judge himself. State v. Richardson, supra; State v. Bosworth, supra.
Whether the prejudicial information is contained in a pre-sentence investigation report or is communicated to the sentencing judge directly, upon request and appropriate allegation (as here) defendant must be given access to derogatory information unless the judge determines after an in camera examination that the material should be withheld because it is not relevant or was obviously intended to be confidential. State v. Segers, 357 So.2d 1 (La. 1978); State v. Bosworth, supra; State v. Owens, 377 So.2d 316 (La.1979). Even when the court determines that information was given in confidence, it should convey the substance of the information to defendant, defense counsel, or other person acting on his behalf after eliminating the name and identifying information from the report. State v. Richardson, supra. American Bar Association Standards Relating to the Administration of Criminal Justice, Standards Relating to Sentencing Standards and Alternatives, Standard 4.4(a) (1968).
Here defendant was undoubtedly adversely affected by the conversation the trial judge had with Ms. Jones, but we cannot determine from the record whether Ms. Jones' communication to the sentencing judge was in confidence or whether the information given him was inaccurate or misleading in a material way. However, even assuming the communication was entirely confidential and defendant could not contest its substantial accuracy, defendant here suffered more than minor prejudice in deciding not to request a pre-sentence hearing in reliance upon the sentencing judge's representations. An opportunity to present information at a pre-sentence hearing is of particular importance when the defendant pleads guilty because it may be his only chance to effectively present his *751 version of the offense and his version of mitigating factors.[4]
In addition to insuring that the information the trial judge relies upon in sentencing is accurate, an in-court proceeding prior to sentencing provides defendant an opportunity to present the court with information which he believes is relevant to the sentencing process and may aid the judge in the exercise of his sentencing discretion. It contributes to rehabilitation and promotes respect for the judicial process by facilitating the imposition of sentence in a manner which inclines the defendant's family and friends and perhaps defendant himself to believe that while the sentence may not be to their liking, defendant was given an opportunity to be heard before being sentenced and he was not singled out for sentencing in an arbitrary fashion. See ABA Standards of Criminal Justice Relating to Sentencing Alternatives and Procedures, Comment to Standard 5.4 (1968); Hall, George, and Force, Criminal Law and Procedure 1132 (1976).
In the case at bar a sentence of forty years with at least half to be served without benefit of probation, parole, or suspension of sentence is so close to the maximum sentence of forty years without benefit of probation, parole, or suspension of sentence that it appears on its face to be contrary to the trial judge's assertion that he wouldn't "hang" defendant nor was it intermediate in length. Though it was perfectly proper for the trial judge to speak to the victim prior to imposing sentence, the trial judge's assurances that he would only consider certain material in the pre-sentence investigative report in sentencing defendant and that defendant would receive less than a maximum sentence, minimally induced defendant to forego a request for a sentencing hearing.
While our jurisprudence doesn't explicitly require a pre-sentence hearing simply upon the request of the defendant, we have recognized pre-sentence hearings as an outgrowth of minimal due process and fairness requirements. In a case of this nature where a pleading defendant makes no complaint as to the voluntariness of his guilty plea and his primary complaint about sentencing is that he was induced to forego a request for a pre-sentence hearing by an assurance about his sentence that was not fulfilled, we are prompted to vacate the sentence and remand to the trial court for a pre-sentence hearing and resentencing if only out of a concern for the appearance of fairness and to encourage respect for the judicial process.

Decree
For the foregoing reasons defendant's sentence is vacated and the case is remanded to the trial court for a pre-sentence hearing and resentencing.
NOTES
[1] One court appointed psychiatrist concluded that defendant was possibly experiencing periods of psychosis which would impair his ability to know right from wrong. He offered no opinion as to defendant's sanity at the time of the offense, but believed that defendant was "borderline insane" when examined. The second psychiatrist on the panel found indications that defendant was suffering from a mental illness of such severity that it interfered with his ability to know right from wrong. This psychiatrist could not state an opinion as to defendant's mental condition at the time of the offense because of defendant's state of mental confusion at the time of the examination.
[2] The trial judge's imposition of a sentence of forty years "at least half of which" shall be served without benefit of parole, probation, or suspension of sentence may be illegal as an indeterminate sentence in violation of C.Cr.P. 879. However, since we vacate the sentence on other grounds we need not reach the merits of this issue.
[3] We have indicated in State v. Trahan, 367 So.2d 752 (La.1979), that such a hearing is not a full scale trial with the state being required to prove its contentions beyond a reasonable doubt. The state is merely required to show a factual basis for its contentions, but the defendant must be given the opportunity to contradict or explain this showing. See 360 So.2d 176, Appendix to State v. Bosworth.
[4] The ABA Approved Draft of Standards Relating to Sentencing Alternatives and Procedures, Standard 5.4(c) (1968) rejects the idea that the traditional practice of asking a defendant if he wishes to make a statement on his own behalf at time of sentencing is a sufficient method of permitting the defendant to participate in the sentencing process.